**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

VINCENT A. VARLEY, II,

                Plaintiff,

- v -                                Civ. No. 9:13-CV-00569
                                          (BKS/RFT)

WAYNE FARMER, Sergeant, Warren County Jail.
                Defendant.

**APPEARANCES:**                         **OF COUNSEL:**

VINCENT A. VARLEY, II
*Pro se* Plaintiff
#37982
Rensselaer County Jail
4000 Main Street
Troy, NY 12180

LEMIRE, JOHNSON & HIGGINS, LLC      GREGG T. JOHNSON, ESQ.
Attorney for Defendant
P.O. Box 2485
2534 Route 9
Malta, NY 12020

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

On May 13, 2013,[1] *pro se* Plaintiff Vincent A. Varley, II, while incarcerated at Warren County Jail ("WCJ"), commenced a civil rights action, pursuant to 28 U.S.C. § 1983, alleging that Defendants Correction Officer Dickinson and Sergeant Wayne Farmer violated his constitutional rights. *See generally* Dkt. No. 1, Compl. On August 22, 2013, the Honorable Lawrence E. Kahn, Senior United States District Judge, performed an initial review of the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, and dismissed certain claims and Defendant Dickinson, thus leaving only two causes of action remaining against Defendant Farmer: 1) wrongful confinement without due process, and 2) a First Amendment retaliation claim.[2] Dkt. No. 12, Mem.-Dec. & Order, dated Aug. 22, 2013. On August 20, 2014, Defendant filed a Motion for Summary Judgment. Dkt. No. 48, Mot. for Summ. J. Plaintiff filed his Response in Opposition thereto. Dkt. No. 50, Pl.'s Resp. in Opp'n. On September 22, 2014, Defendant submitted his Reply. Dkt. No. 51, Def.'s Reply.

---

[1] The Second Circuit has held that due to the unique difficulties faced by incarcerated *pro se* litigants, a prisoner's pleading is deemed to be properly filed at the time he or she hands the papers to the prison authorities for transmittal to the court. *Dory v. Ryan*, 999 F.2d 679, 681-82 (2d Cir. 1993), *modified on reh'g*, 25 F.3d 81 (2d Cir. 1994). It is presumed that a prisoner handed the pleading to the prison guard on the date he signed the complaint. *Shaw v. Superintendent Attica Corr. Fac.*, 2007 WL 951459, at *3 n.3 (N.D.N.Y. Mar. 28, 2007).

[2] Plaintiff subsequently filed an Amended Complaint, which was converted to a Motion to Amend. Dkt. No. 29. This Court denied Plaintiff's Motion to Amend. Dkt. No. 45, Mem.-Dec. & Order, dated May 28, 2014. Thus, the parties are operating off the original Complaint.

# I. DISCUSSION

## A. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when

the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *accord Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.

## B. Material Facts

On January 3, 2013, while detained at WCJ, Plaintiff filed a grievance against Correctional Officer Dickinson alleging that he was "sexually harassed and abused by" Dickinson during a routine strip search.[3] Dkt. No. 50, Pl.'s Resp. in Opp'n, Grievance Form - Part I, dated Jan. 3. 2013. On January 6, 2013, Plaintiff submitted a "Request for Medical Services/Physical Assessment,"[4] stating that he had "[r]eoccuring nightmares and trouble sleeping due to an excessive strip search [conducted] by [Correctional Officer] Dickinson . . . . Every time [he] sees him [his] hands get all clammy and heart feels like its gonna [sic] pound through [his] chest. [He] get[s] sick to [his] stomach and vomit in [his] mouth [and] wake[s] up from [his] nightmares of [Correctional Officer Dickinson] in cold sweats, shaking and breathing [illegible]." Dkt. No. 48-5, Ex. A, Medical Slip, dated Jan. 6, 2013.

Defendant Farmer is employed by the Warren County Sheriff's Office as a Correction Sergeant assigned to WCJ. Dkt. No. 48-4, Wayne Farmer Decl., dated Aug. 18, 2014, at ¶ 2. Defendant Farmer was on duty when Plaintiff submitted his

---

[3] In particular, Plaintiff alleges that, on December 30, 2012, after Plaintiff left the visitation room, Dickinson asked him to strip down, bend over, lift his genitals, spread his buttocks, and cough; Dickinson ordered Plaintiff to repeat these acts five times. Then he was directed to open his mouth and rub his fingers between his gums and lips. Compl. at ¶¶ 5-9. On initial review, the Honorable Lawrence E. Kahn, Senior United States District Judge, issued a Memorandum-Decision and Order dismissing Plaintiff's Eighth Amendment claim against Dickinson. Dkt. No. 12, Mem.-Dec. & Order, dated Aug. 22, 2013.

[4] The Court will interchangeably refer to Plaintiff's Request for Medical Services/Physical Assessment as a medical slip throughout this Report and Recommendation.

medical slip. *Id.* at ¶ 4. Defendant Farmer read Plaintiff's medical slip and questioned Plaintiff about his statements. *Id.* at ¶¶ 5-6. When asked by Defendant Farmer whether he would like to be transferred to protective custody, Plaintiff replied that he is "not scared for [his] safety or in fear of the officers or inmates." Compl. at ¶¶ 23-25. After reflecting on the contents of Plaintiff's medical slip, Defendant Farmer placed Plaintiff in protective custody at 9:00 p.m. on January 6, 2013. Dkt. No. 48-3, Ex. F., Vincent A. Varley, II, Dep., dated Dec. 3, 2013, at p. 23; Farmer Decl. at ¶ 7; & Dkt. No. 48-7, Ex. C, Admin. Seg. Order, dated Jan. 6, 2013. He was released on January 7, 2012, at 3:08 p.m. Dkt. No. 48-8, Ex. D, Shift Log Entry, dated Jan. 7, 2013.

On January 7, 2013, at approximately 7:30 a.m., Plaintiff filed a grievance against Defendant Farmer for placing him in protective custody. Dkt. 48-9, Ex. G, Grievance Form - Part I, dated Jan. 7, 2013. It stated that Farmer "wrongfully and . . . illegally [placed him] in segregation due to punishment of prior grievances. [Farmer] is committing vengeful acts against me. Never once [or] at anytime did I say I was concerned or feared for my safety [.]" *Id.* In the same grievance form, under the subheading "Action requested by the grievant," Plaintiff asked for immediate removal from protective custody and that "[Sergeant] Farmer not ever be able to handle" a situation concerning him because "[Farmer] is committing vengeful acts .

. . due to prior grievances[.]" *Id.* On January 12, 2013, the grievance coordinator found that "Inmate Varley [did] not offer evidence to support his claims that Sgt. Farmer was acting wrongfully or illegally by placing him in Protective Custody." Dkt. No. 48-11, Ex. I, Grievance Form - Part II, dated Jan. 12, 2013. That same date, Plaintiff received the grievance coordinator's decision. *Id.* Plaintiff did not appeal the grievance coordinator's decision. *Id.*

### C. Exhaustion Requirements

The Prison Litigation Reform Act ("PLRA") imposes several restrictive conditions on the ability of prisoners to maintain federal civil rights actions. The PLRA provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The Supreme Court has held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of administrative remedies is required even when the grievance process does not permit an award of money damages and the prisoner seeks only money damages, provided that the grievance

tribunal has the authority to take some responsive action. *See Thomas v. Wright*, 2002 WL 31309190, at *5 (N.D.N.Y. Oct. 11, 2002) (citing *Booth v. Churner*, 531 U.S. 731 (2002)). In *Woodford v. NGO*, the Supreme Court stated that to properly exhaust administrative remedies prisoners must "compl[y] with an agency's deadlines and other critical procedural rules [.]" 548 U.S. 81, 90 (2006). The rules are "defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Id*. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*.

The WCJ Inmate Rules and Regulations require that an inmate first attempt to informally resolve his complaints. Dkt. No. 48-16, Ex. K, Inmate Rules and Regs., dated Oct. 2012. If dissatisfied with the informal resolution, the inmate must use a designated form to submit a written grievance. *Id.* The grievance is then investigated by a grievance coordinator who issues a written determination. *Id.* After receiving the grievance coordinator's decision, the inmate may appeal to the Correction Administration Office ("CAO"). Finally, if dissatisfied with the CAO's determination, the inmate may then appeal to the State Commission of Corrections. *Id.*

Here, Plaintiff received the grievance coordinator's unfavorable decision on January 12, 2013, after he had been removed from protective custody. Having received some relief sought by the grievance, Plaintiff did not need to appeal the decision as it pertained to removal from protective custody. However, he was required to exhaust all available remedies with respect to his complaint that he was placed in protective custody "illegally" and that Farmer placed him there in retaliation for submitting a grievance against Correctional Officer Dickinson. *Giano v. Goord,* 380 F.3d 670, 675 (2d Cir. 2004) (asserting that the Supreme Court held in *Porter v. Nussle*, 534 U.S. 516 (2002), that retaliation claims are subject to the PLRA's exhaustion requirement).

Though exhaustion is mandatory, certain caveats apply wherein a prisoner's failure to exhaust may be excused: (1) when administrative remedies are not available to the prisoner, *Abney v. McGinnis,* 380 F.3d 663 (2d Cir. 2004); (2) when the defendants waive the defense by failing to raise or preserve it, *Johnson v. Testman,* 380 F.3d 691 (2d Cir. 2004), or acted in such a manner that they are estopped from raising it, *Ziemba v. Wezner,* 366 F.3d 161 (2d Cir. 2004); or (3) when special circumstances exist to justify the prisoner's failure to comply with the exhaustion requirement, *Giano v. Goord,* 380 F.3d at 670. None of these exceptions apply. First, there is no dispute that Plaintiff had administrative remedies available to him prior to

initiating this federal case. Plaintiff could have appealed the grievance coordinator's unfavorable decision regarding Farmer's alleged retaliatory acts and/or his allegation that he was "illegally" placed in protective custody. Second, Plaintiff does not argue that Defendant inhibited his ability to appeal his grievance. And Third, the Court cannot delineate special circumstances that would justify Plaintiff's failure to comply with the PLRA.[5] As a result, the Court recommends **granting** Defendant's Motion for Summary Judgment in its entirety as Plaintiff failed to exhaust his administrative remedies. Alternatively, the Court will address the merits of Plaintiff's remaining claims.

### D. Due Process

The Due Process Clause of the Fourteenth Amendment protects against restraints or conditions of confinement that "exceed[] the sentence in . . . an unexpected manner[.]" *Sandin v. Conner*, 515 U.S. 472, 484 (1995). To state a due process claim under § 1983, an inmate must first establish that he enjoys a protected liberty interest. *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). Inmates' liberty interests are derived from two sources: (1) the Due Process Clause of the Fourteenth Amendment;

---

[5] The Court notes that the Second Circuit has recently declined to address whether special circumstances and estoppel are viable exceptions following the Supreme Court's decision in *Woodford*. *See Amador v. Andrews,* 655 F.3d 89, 102-03 (2d Cir. 2011) ("We have questioned whether, in light of *Woodford*, the doctrines of estoppel and special circumstances survived.") (citing *Macias v. Zenk*, 495 F.3d 37, 43 n.1 (2d Cir. 2007); *Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006)).

and (2) state statute or regulations. *Id.*

With regard to liberty interests arising directly under the Due Process Clause, the Supreme Court has "narrowly circumscribed its scope to protect no more than the 'most basic liberty interests in prisoners[,]'" *Arce v. Walker*, 139 F.3d at 333 (quoting *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)), and limited to freedom from restraint that "exceed[] the sentence in . . . an unexpected manner[,]" *Sandin v. Conner*, 515 U.S. at 478.

Turning to liberty interests created by the state, the Supreme Court states that such liberty interests shall be limited solely to those deprivations which subject a prisoner to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. at 484; *see also Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (citing *Sandin*); *Welch v. Bartlett*, 196 F.3d 389, 392 (2d Cir. 1999). Factors relevant to an analysis of what constitutes an atypical and significant hardship include "(1) the effect of the confinement on the length of prison incarceration, (2) the extent to which the conditions of segregation differ from other routine prison conditions, and (3) the duration of the disciplinary segregation compared to discretionary confinement." *Spaight v. Cinchon*, 1998 WL 167297, at *5 (N.D.N.Y. Apr. 3, 1998) (citing *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir. 1998)); *see also Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (stating that in

assessing what constitutes an atypical and significant hardship, "[b]oth the conditions [of confinement] and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical" (citation omitted)). The Second Circuit Court of Appeals has stated that "[w]here the plaintiff was confined for an intermediate duration – between 101 and 305 days – development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required." *Palmer v. Richards*, 364 F.3d at 64-65 (quoting *Colon v. Howard*, 215, F.3d 227, 232 (2d Cir. 2000)); *see also Hanrahan v. Doling*, 331 F.3d 93, 97-98 (2d Cir. 2003) ("[W]here the actual period of disciplinary confinement is insignificant or the restrictions imposed relatively minor, such confinement may not implicate a constitutionally protected liberty interest."); *Edmonson v. Coughlin*, 1996 WL 622626, at *4-5 (W.D.N.Y. Oct. 4, 1996) (citing cases for the proposition that courts within the Second Circuit tend to rule, as a matter of law, that "disciplinary keeplock or SHU confinement to 60 days or less in New York prisons is not an atypical or significant hardship in relation to the ordinary incidents of prison life"). If the conditions of confinement are undisputed, a court may decide the *Sandin* issue as a matter of law. *Palmer v. Richards*, 364 F.3d at 65. To be sure, the inquiry under *Sandin* is "whether the duration of Plaintiff's actual period of administrative or

disciplinary confinement and the conditions thereof are so different from conditions manifest in both the general population of the prison and other segregative housing as to give rise to a liberty interest." *Giano v. Selsky*, 238 F.3d at 225.

Here, the duration of Plaintiff's eighteen-hour overnight confinement in protective custody is not an "atypical and significant hardship" under *Sandin*. *Sealey v. Giltner*, 197 F.3d 578 (2d Cir. 1999) (agreeing with the district court that 101 days in SHU, even with its degree of incremental harshness compared to general population, is not an atypical and significant hardship); *Rivera v. Coughlin*, 1996 WL 22342, at *4 (S.D.N.Y. Jan. 22, 1996) (concluding that inmate's eighty-nine days in keeplock did not constitute an atypical or significant hardship).

In addition, the conditions of protective custody which Plaintiff claims to have suffered is not a dramatic departure from routine prison conditions. While in protective custody, according to Plaintiff, he was not allowed to use the phone, socialize with other inmates, and was confined to his cell. Pl.'s Resp. in Opp'n, at RESPONSE TO MATERIAL FACTS ¶ 12. While inmates in protective custody are generally permitted to use the phone, Defendant does not address whether Plaintiff was allowed to use the phone during his eighteen-hour custody. Also, during this confinement, Plaintiff was asked to refrain from speaking to other inmates detained in protective custody, and he refused to leave his cell to take a shower and participate

in recreation. Dkt. No. 48-2, Ex. E, Shift Log Entry Summ., at pp. 51-52. Furthermore, with the exception that inmates in protective custody are on a different timetable from those in general population, inmates placed in protective custody enjoy all of the same privileges as inmates in general population including, but not limited to visitation, meetings, showers, and telephone calls. Farmer Decl. at ¶ 10. Thus, the Court finds that the conditions in protective custody mirror, with insignificant exceptions, the conditions imposed on inmates in general population and therefore did not amount to an atypical and significant hardship. Thus, Plaintiff did not have a liberty interest in remaining free from protective custody and was not entitled to any due process protections prior to his segregation. As a result, the Court recommends **granting** Defendant's Motion for Summary Judgment as to Plaintiff's due process claim.

### E. Retaliation

The Court is equally unpersuaded by Plaintiff's First Amendment retaliation claim against Farmer. The Second Circuit has made it clear that an inmate has a substantive due process right not to be subjected to retaliation for the exercise of a constitutional right, such as petitioning the government for redress of grievances. *Jones v. Coughlin,* 45 F.3d 677, 679-80 (2d Cir. 1995); *Franco v. Kelly,* 854 F.2d 584, 589-90 (2d Cir. 1988). Central to such claims is the notion that in a prison setting,

corrections officials may not take actions which would have a chilling effect upon an inmate's exercise of First Amendment rights. *Gill v. Pidlypchak*, 389 F.3d 379, 381-83 (2d Cir. 2004). Because of the relative ease with which claims of retaliation can be invoked, courts should examine such claims "with skepticism and particular care." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (citation omitted); *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ("[V]irtually any adverse action taken against a prisoner by a prison official — even those otherwise not rising to the level of a constitutional violation — can be characterized as a constitutionally proscribed retaliatory act." (citation omitted)); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

To state a First Amendment retaliation claim, a plaintiff must allege "1) that the speech or conduct at issue was protected, 2) that the defendant took adverse action against the plaintiff, and 3) that there was a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak,* 389 F.3d at 384.

The plaintiff bears the initial burden in showing that the defendant's actions were improperly motivated. *Scott v. Coughlin*, 344 F.3d at 288. Turning to the third prong, in order to satisfy this prong, a prisoner must present evidence inferring that a defendant acted with an improper motive. Such evidence includes: (1) temporal

proximity between the protected activity and the alleged retaliatory act; (2) plaintiff's prior good disciplinary record; (3) plaintiff's vindication at his disciplinary hearing; and (4) defendants' statements regarding their motive for the discipline. *See Colon v. Coughlin*, 58 F.3d at 872-73. A plaintiff may meet this burden by presenting circumstantial evidence of a retaliatory motive, thus obviating the need for direct evidence. *Bennett v. Goord*, 343 F.3d 133, 139 (2d Cir. 2003). "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (citing *Dawes v. Walker*, 239 F.3d at 493). Furthermore, in satisfying the causal connection requirement, also known as temporal proximity, the allegations must be "sufficient to support the inference that the speech played a substantial part in the adverse action." *Dawes v. Walker*, 239 F.3d at 492 (internal quotation marks and citations omitted) (cited in *Davis*, 320 F.3d at 353).

In situations where the defendant's actions are the result of both retaliatory and legitimate reasons, the burden shifts to the defendant to show that he or she would have taken the same action absent the retaliatory motive. *Graham v. Henderson*, 89 F.3d at 79 (citing, *inter alia*, *Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977) & *Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir. 1994)); *see also Gayle v.*

*Gonyea*, 313 F.3d 677 (2d Cir. 2002) (defendant may successfully meet this burden of justification with regard to a particular punishment by demonstrating that "plaintiff committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report" (internal quotation marks and citations omitted)); *Carpio v. Walker*, 1997 WL 642543, at *6 (N.D.N.Y. Oct. 15,1997)

On January 6, 2013, Farmer read Plaintiff's medical slip, which described various psychological and physiological ailments allegedly suffered by Plaintiff due to the December 30 strip search conducted by Correctional Officer Dickinson. Dkt. No. 48-5, Ex. A, Medical Slip. Plaintiff states that Farmer questioned him about the medical slip, and advised him that he should file a grievance if his intention is to complain about Dickinson's behavior. Compl. at ¶¶ 18-19. Plaintiff then informed Farmer that he already filed a grievance on January 3, which Farmer was apparently unaware of. Compl. at ¶ 20; Farmer Decl. at ¶ 9. Plaintiff's theory of retaliation seems to rest upon the notion that Farmer placed him in protective custody because of the grievance Plaintiff filed against Dickinson. Presuming for the moment that Plaintiff has met all of the elements of his retaliation claim, namely, he exercised his First Amendment right to file a grievance for which he was punished by Defendant Farmer, who, after learning about the grievance, put him in segregative custody, his claim still fails. Pointedly, even if we attributed some retaliatory motive to Defendant

Farmer, it is clear based on what has been presented to the Court that Farmer also possessed a legitimate, non-retaliatory motive to segregate Plaintiff based upon Plaintiff's medical slip wherein he expressed fears and anxieties stemming from the alleged incident with Dickinson that manifested into physical ailments. Ex. A, Medical Slip. Upon reflection, Defendant Farmer felt that removing Plaintiff from the housing unit where Dickinson was assigned was appropriate and that he did not take such action in order to punish Plaintiff. Farmer Decl. at ¶¶ 7 & 9. Thus, Defendant has adequately shown he would have taken the same action even without a retaliatory motive. *Graham v. Henderson*, 89 F.3d at 79 (citing, *inter alia*, *Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. at 287 & *Lowrance v. Achtyl*, 20 F.3d at 535). Thus, the Court recommends **granting** Defendant's Motion for Summary Judgment on the retaliation claim.

### F. Qualified Immunity

In light of the above analysis wherein this Court has assessed no constitutional violations occurred, it is unnecessary for us to consider this affirmative defense. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

## II. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendant's Motion for Summary Judgment (Dkt. No. 48) be **GRANTED** and the case be **DISMISSED** in its entirety; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: January 16, 2015
      Albany, New York

Randolph F. Treece
U.S. Magistrate Judge