**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**VINCENT A. VARLEY, II,**

**Plaintiff,**

**v.**                                                  **9:13 -CV-0569 (BKS/RFT)**

**WAYNE FARMER,** *Sergeant, Warren County*
*Jail***,**

**Defendant.**

_____

**Appearances:**

**Vincent A. Varley, II**
#37982
Rensselaer County Jail
4000 Main Street
Troy, NY 12180
Plaintiff, pro se

**Gregg T. Johnson, Esq.**
**April J. Laws, Esq.**
Lemire, Johnson Law Firm
P.O. Box 2485
Malta, NY 12020
Attorney for Defendant

**Hon. Brenda K. Sannes, U. S. District Judge**

## MEMORANDUM-DECISION AND ORDER

### I.  Introduction

Plaintiff pro se Vincent A. Varley, II brought this action against defendants Correctional

Officer Dickinson and Sgt. Wayne Farmer of the Warren County Jail under 42 U.S.C. § 1983

alleging that: (1) Officer Dickinson acted with deliberate indifference in conducting an abusive

and improper strip search; (2) Sgt. Farmer failed to properly investigate plaintiff's grievance regarding the strip search; (3) Sgt. Farmer wrongfully confined plaintiff to involuntary protective custody without due process; and (4) Sgt. Farmer placed plaintiff in involuntary protective custody in retaliation for filing the grievance. Dkt. No. 1; *see* Dkt. No. 12, at 4. The first two claims were dismissed by United States District Judge Lawrence E. Kahn on August 22, 2013, following his initial review of the complaint pursuant to 28 U.S.C. § 1915(e) in connection with plaintiff's request to proceed *in forma pauperis*. Dkt. No. 12. In his Memorandum-Decision and Order, Judge Kahn also dismissed defendant Dickinson from this action. *Id.*

The remaining defendant, Sgt. Farmer, filed a motion for summary judgment on August 20, 2014, seeking to dismiss the two remaining claims. Dkt. No. 48. Plaintiff filed a response in opposition. Dkt. No. 50. On January 16, 2015, United States Magistrate Judge Randolph F. Treece issued a Report-Recommendation and Order ("R & R") recommending that defendant's motion for summary judgment be granted, and that the case be dismissed in its entirety because plaintiff failed to exhaust his administrative remedies. Dkt. No. 54, at 7-10. Judge Treece found that plaintiff failed to complete the administrative review process because he failed to appeal from the denial of his grievance challenging his placement in protective custody. *Id.*; *see* Dkt. No. 48-9, at 2 (Grievance Form - Part I filled out by plaintiff) and 48-11, at 2 (Grievance Form - Part II stating that plaintiff agreed to accept the decision of the Grievance Coordinator).

Alternatively, Judge Treece recommended that summary judgment be granted because defendant is entitled to judgment as a matter of law on both claims. Judge Treece found that the duration and conditions of plaintiff's eighteen-hour overnight confinement in protective custody did not constitute an atypical and significant hardship which would give rise to a liberty interest

under the Due Process Clause. Dkt. No. 54, at 13-14. With respect to the retaliation claim,

Judge Treece concluded that defendant had a "legitimate, non-retaliatory motive to segregate

Plaintiff based upon Plaintiff's medical slip wherein he expressed fears and anxieties stemming

from the alleged incident with Dickinson that manifested into physical ailments." Dkt. No. 54, at

18. Judge Treece noted that defendant "felt that *removing Plaintiff from the housing unit where*

*Dickinson was assigned* was appropriate and that he did not take such action in order to punish

Plaintiff." *Id.* (emphasis added). Judge Treece concluded that defendant "has adequately shown

that he would have taken the same action even without a retaliatory motive." *Id.*

Plaintiff has filed an objection to the dismissal of his retaliation claim. Dkt. No. 55.

Plaintiff argues that his placement into protective custody was retaliatory because *he was never*

*moved into a unit separate from Officer Dickinson*: he was merely confined to his cell, in the

same unit that Officer Dickinson was working. Dkt. No. 55 at 2 (emphasis added). Defendant

has not responded to this objection. For the reasons set forth below, the R & R is adopted in part

and rejected in part.

## II.  Standard of Review

This court reviews *de novo* those portions of the Magistrate Judge's findings and

recommendations that have been properly preserved with a specific objection. *Petersen v.*

*Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012); 28 U.S.C. § 636(b)(1)(C). Findings and

recommendations as to which there was no properly preserved objection are reviewed for clear

error. *Id.*

Summary judgment may be granted only if all the submissions taken together "show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law." *In re World Trade Center Lower Manhattan Disaster Site Litig.*, 758 F.3d 202, 210 (2d Cir. 2014).   A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).   A fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*   In ruling on a summary judgment motion, the court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003).

### III.  Discussion

Plaintiff has not objected to Judge Treece's findings or conclusions regarding the exhaustion of administrative remedies.  Judge Treece concluded: that plaintiff failed to exhaust his administrative remedies because he failed to appeal the grievance coordinator's rejection of his claim regarding his placement in protective custody; that plaintiff's failure to exhaust was not excused; and that the motion for summary judgment should be granted in its entirety based upon plaintiff's failure to exhaust his administrative remedies.  Dkt. No. 54, at 6-10; *see* Dkt. Nos. 48-9, at 2, and 48-11, at 2.  The court adopts Judge Treece's findings and conclusions in their entirety regarding plaintiff's failure to exhaust his administrative remedies.

Plaintiff has also not objected to Judge Treece's ruling, in the alternative, that defendant is entitled to summary judgment as a matter of law on the due process confinement claim.  It is undisputed that plaintiff was in protective custody from January 6, 2013, at 9 p.m. to January 7,

2013, at 3:08 p.m.[1]  Dkt. No. 51-1, ¶¶ 6, 13; Dkt. No. 50, ¶¶ 6, 13.  The court adopts Judge

Treece's determination that plaintiff did not have a liberty interest in connection with his

eighteen-hour overnight confinement for the reasons stated in the R & R.  Dkt. No. 54, at 10-14.

    Plaintiff has objected "to the retaliation dismissal," alleging that the "evidence and proof"

establish that "Sgt. Farmer never removed plaintiff from his cell or unit" controlled by Officer

Dickinson.  Dkt. No. 55, at 1.  Plaintiff argues that Sgt. Farmer's failure to remove him from the

unit controlled by Officer Dickinson evinces Sgt. Farmer's retaliatory intent.  *Id.*, at 2.  This

court has considered plaintiff's pro se objections "to raise the strongest argument that they

suggest."  *Quinn v. Stewart*, No. 10 Civ. 8692 (PAE)(JCF), 2012 WL 1080145, at *4, 2012 U.S.

Dist. LEXIS 46524, at *10 (S.D.N.Y. Apr. 2, 2012).  It appears that plaintiff is challenging Judge

Treece's conclusion that defendant established he would have taken the same action even

without a retaliatory motive, and Judge Treece's reliance on defendant's affidavit describing the

reasonableness of *removing* plaintiff from the unit where Officer Dickinson was assigned.  *See*

Dkt. No. 54, at 18 (noting that defendant "felt that *removing Plaintiff from the housing unit*

*where Dickinson was assigned* was appropriate") (emphasis added).

    In order to prove a First Amendment retaliation claim a prisoner must show: "(1) that the

speech or conduct at issue was protected; (2) that the defendant took adverse action against the

plaintiff; and (3) that there was a causal connection between the protected speech and the adverse

action."  *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (quoting *Gill v. Pidlypchak*, 389

F.3d 379, 380 (2d Cir. 2004)).  To establish adverse action, the plaintiff must show conduct "that

---

[1] The R & R contains a typographical error, describing plaintiff's release date as January 7, 201**2**, when it was January 7, 201**3**.  Dkt. No. 54, at 6.

would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights." *Gill*, 389 F.3d at 381 (internal quotation and citation omitted). A causal connection may be inferred from the temporal proximity between the time of the grievance and the adverse action. *Espinal*, 558 F.3d at 129.

If a plaintiff meets his "initial burden of proving that a discriminatory motive played a substantial part in the state action at issue" then "the burden shifts to defendant to show that it would have taken the action even in the absence of the improper motive." *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994) (internal brackets and quotation omitted). A defendant is entitled to judgment in his favor if he shows, by a preponderance of evidence that the adverse action "would have been taken based on the proper reasons alone." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). "A finding of sufficient permissible reasons to justify state action is 'readily drawn in the context of prison administration where we have been cautioned to recognize that prison officials have broad administrative and discretionary authority.'" *Id.* (quoting *Lowrance*, 20 F.3d at 535).

In his verified Complaint, plaintiff alleged that: he filed a grievance on January 3, 2013 regarding an abusive strip search by Officer Dickinson; when defendant learned about plaintiff's grievance three days later, defendant told plaintiff he "should be concerned with writing alligations [sic] as the ones [plaintiff] did against his officers;" defendant pressured plaintiff to sign into protective custody; defendant said that he would be afraid if he made these type of allegations against officers; and defendant then placed plaintiff in protective custody over his objection. Dkt No. 1, ¶¶ 11-12, 16, 22-27, 32, 35-36. Plaintiff further alleged that he was placed in protective custody in the housing unit where Officer Dickinson was working. *Id.*, at ¶ 34.

Plaintiff alleged that after defendant locked him in his cell, defendant walked over to Officer

Dickinson, whispered something to him, and Officer Dickinson then looked up at plaintiff

smiling.  *Id.*, at ¶¶ 36, 38.

In support of his claim that he was never moved away from Officer Dickinson, plaintiff

has cited to shift logs which indicate that plaintiff remained in the same pod – Pod D – while he

was in protective custody.  *See* Dkt. No. 50, at 2; Dkt. No. 48-2, at 50-51.  The shift logs also

appear to show that Officer Dickinson was there.  A log entry for January 6, 2013, at 9:58 p.m.,

almost an hour after plaintiff was placed in protective custody, states that plaintiff "was told not

to be in communicate [sic] with the other inmates because he is in PC."  Dkt. No. 48-2, at 51.

Officer Dickinson is the officer identified in this log entry.  *Id.*  Plaintiff testified in his

deposition that while he was in protective custody Officer Dickinson told him to not to talk to

other inmates.  Dkt. No. 48-3, at 9.

There is no dispute that plaintiff's filing of a grievance constituted protected conduct.

*See Gill*, 389 F.3d at 384.  Defendant argued that the eighteen-hour period of protective custody

did not constitute "adverse action" and that, in any event, plaintiff could not show that there was

a causal connection between his placement in protective custody and the grievance. Dkt. No. 48-

17, at 14-17.  Judge Treece assumed, for the purpose of his recommendation, that plaintiff "met

all of the elements of his retaliation claim."  Dkt. No. 54, at 17-18.[2]  Judge Treece concluded that

---

[2] For the purposes of this Order, the court will also assume that plaintiff satisfied his burden on
his retaliation claim, *see Espinal*, 558 F.3d at 129, although it is a close question whether he has
presented sufficient evidence to raise a triable issue of fact regarding whether his eighteen-hour
period of protective confinement would deter an ordinary person from exercising his
constitutional rights.  *See, e.g., Houston v. Horn*, No. 09 Civ. 801 (DLC), 2010 WL 1948612, at
*9, 2010 U.S. Dist. LEXIS 47932, at *27-28 (S.D.N.Y. 2010) (holding that plaintiff failed to

even assuming plaintiff met his burden on the retaliation claim, defendant was entitled to

summary judgment because defendant "has adequately shown he would have taken the same

action even without a retaliatory motive." *Id.*, at 18.

Defendant's explanation for his action is as follows. When defendant was on duty on

January 6, 2013, plaintiff submitted a request for medical services in which plaintiff described

"reoccurring nightmares and trouble sleeping due to an excessive strip search by CO Dickinson

and sexual harrasment [sic]." Dkt. No. 48-4, ¶ 4; Dkt. No. 48-5, at 2. Plaintiff's request stated,

"Everytime I see him my hands get all clammy and heart feels like its gonna pound through my

chest. I get sick to my stomach and vomit in mouth. I wake up from nightmares of him in cold

sweats, shaking and breathing hard." Dkt. No. 48-5, at 2. Defendant said that based upon this

medical request, his conversations with plaintiff, and plaintiff's "fear of CO Dickinson,"

---

meet his burden of showing that five-day placement in close custody was an adverse action when
he failed to show he was denied any privileges that were previously available to him); *Ward v.
Taylor*, No. 04 Civ. 1391 (JJF), 2008 WL 2945955, at *9, 2008 U.S. Dist. LEXIS 57756, at *25-
26 (D. Delaware 2008) (finding that plaintiff's transfer into isolation or protective custody was
sufficient to raise genuine issue of fact regarding adverse action), *aff'd*, 348 F. App'x 766 (3d
Cir. 2009); *Allah v. Poole,* 506 F. Supp. 2d 174, 185-86 (W.D.N.Y. 2007) (holding that
seventeen days in involuntary protective custody where plaintiff alleged that he was not allowed
recreation time and was kept uncomfortably cold was sufficient to raise triable issue of fact
regarding adverse action); *Cf. Sanchez v. Velez*, No. 08 Civ. 1519 (NRB), 2009 WL 2252319, at
*5, 2009 U.S. Dist. LEXIS 64744, at *14, (S.D.N.Y. 2009) (finding allegation of involuntary
protective custody without cause and threat with punitive segregation sufficient to allege adverse
action).

Plaintiff testified that while he was in protective custody he could not socialize with other
inmates; that he needed permission to shower, use the telephone or get recreation; and that there
was no religious service. Dkt. No. 48-3, at 7-8. Defendant stated that inmates in protective
custody "enjoy all of the same privileges" as other inmates, only on a different schedule. Dkt.
No. 48-4, ¶ 10. Considering the evidence in the light most favorable to plaintiff, including the
evidence that his protective custody was in the unit with the officer about whose strip search he
had recently complained, the court will assume plaintiff has met his burden of establishing a

defendant believed "it would be would be best to put Plaintiff in protective custody for the night." Dkt. No. 48-4, ¶ 7. Defendant further stated that "[p]lacing Plaintiff in protective custody *would remove him from the housing unit where CO Dickinson was assigned*." *Id.* (emphasis added). Defendant never addressed plaintiff's allegations that he was placed in protective custody in the same unit where Officer Dickinson was working.

In his R & R, Judge Treece concluded that "Defendant has adequately shown he would have taken the same action even without a retaliatory motive." *Id.* at 18. Judge Treece noted that based upon plaintiff's expressed fear of Officer Dickinson, "Defendant Farmer felt that removing Plaintiff from the housing unit where Dickinson was assigned was appropriate and that he did not take such action in order to punish Plaintiff." *Id.*

On *de novo* review, this court finds that defendant has failed to meet his burden of showing that he would have taken the same action even without a retaliatory motive. Defendant's affidavit provides a rationale for placing plaintiff in protective custody *away from* Officer Dickinson. However, defendant has failed to respond to the evidence that plaintiff was placed in protective custody within the same unit where Officer Dickinson was working. Therefore, the question of whether there were proper, non-retaliatory reasons for plaintiff's involuntary protective custody presents an issue of fact, and thus defendant is not entitled to summary judgment on the retaliation claim.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Magistrate Judge Treece's Report-Recommendation and Order (Dkt. No. 54) is **ADOPTED** in all respects, except for the finding that defendant met his burden of

---

triable issue of fact on whether there was an adverse action.

9

proof with regard to plaintiff's retaliation claim, as discussed above; and it is further

      **ORDERED** that defendant's summary judgment motion (Dkt. No. 48) is **GRANTED**,

and it is further

      **ORDERED** that plaintiff's unlawful confinement and retaliation claims are

**DISMISSED with prejudice**; and it is further

      **ORDERED** the Clerk of the Court is directed to dismiss the complaint (Dkt. No. 1) and

close this case, and it is further

      **ORDERED** that the Clerk of the Court shall serve a copy of this Memorandum-Decision

and Order in accordance with the Local Rules of the Northern District of New York.

      **IT IS SO ORDERED.**


Dated: February 18, 2015
       Syracuse, New York


Brenda K. Sannes
U.S. District Judge